[Civ. No. 5217. First Appellate District, Division One.—December 21, 1927.]

W. S. LIERLY et al., Respondents, v. DANIEL H. McEWEN, Appellant.

712

James Donovan, John L. McNab and Byron Coleman for Appellant.

W. W. Kaye and Alfred Siemon for Respondents.

TYLER, P. J.—This action was originally brought by plaintiffs against Security Trust Company of Bakersfield as defendant for the purpose of having determined the proportionate amount of royalties that certain locators of oil lands were entitled to under a leasing agreement with the Associated Oil Company, which royalties were held by the defendant banking company under a certain trust agreement. The company later came into court under motion, according to the provisions of the Code of Civil Procedure, and deposited the sum of $1,704.32, the amount held by it, and procured an order bringing into the action certain defendants who thereafter filed pleadings alleging the proportion of the amount they were entitled to. The facts are somewhat involved. It appears from the record that on January 1, 1910, W. S. Lierly, plaintiff herein, made a number of oil locations on government lands under the then existing system and named B. F. Wilson as one of the locators. Shortly thereafter the Associated Oil Company leased certain of these locations, including those in which Wilson's name was used as a locator. As soon as Wilson ascertained the fact that his name had been used as one of the locators he communicated the fact to his partner D. H. McEwen, defendant and appellant herein, advising him that the locations made in his name were for the joint benefit of both, by reason of their partnership. Later the

government sought to disturb the locations so made because of the withdrawal of the particular lands from location by President Taft in the fall of 1909. Nothing was determined under these controversies at this time. On February 25, 1920, Congress passed what is known as the "Leasing Act." On August 10, 1920, the Associated Oil Company entered into an agreement with certain locators, including McEwen, from whom leases were taken covering the locations in which B. F. Wilson was interested. This agreement had for its object the development of the lands under the Leasing Act, in the event that it should be determined that the locators were entitled to a lease. The Associated Oil Company succeeded in procuring a lease from the government upon the properties on condition that it effected a settlement among the various claimants of their conflicting interests. This the company succeeded in doing and on April 2d all of the parties to this action, or their predecessors in interest, signed an agreement with the Associated Oil Company, whereby they agreed upon the proportion that each claimant should have under their various claims. The substance of this contract is: that the government of the United States leased to the Associated Oil Company the southeast quarter of section 26, township 30 south, range 24 east, on condition that such company would clear up any adverse claims against the government upon this quarter-section and upon the further consideration that three other quarter-sections which were put into the naval reserve should be surrendered to the government by all the locators or their successors in interest, and that in consideration of the surrender of these three quarter-sections, the government leased the quarter-section above described to the oil company. This section is outside the naval reserve. It then became incumbent upon those who had claimed some interest, either as locators or subsequent transferees of the three quarter-sections, to adjust their respective rights with the Associated Oil Company, which was done under the contract of April 2, 1921. By the terms of this contract the government was to receive twenty per cent royalty and other interests were to receive five per cent, leaving seventy-five per cent of the net production to be divided between the oil company and the various locators on the three quarter-sections. It is claimed by appellant McEwen that as there were twenty-four locators

on these disputed three quarter-sections and each surrendered to the government the same quantity that each other person surrendered, they therefore surrendered one-eighth of each location considered as a separate surrender of each quarter-section, or, considering the three-quarter sections as a unit, each surrendered 1/24th of the three. That this is the respective relation that each locator stood to the other; one-eighth of one, or 1/24th of the three considered as a unit, and the royalty which the Associated Oil Company agreed to pay them was one-eighth of seventy-five per cent of the net production. One-eighth of the royalty divided by 1/24th gives each person 1/192d part of the royalty of seventy-five per cent, and the agreement specifically provided that this was the interest that each of the locators was entitled to thereunder. This agreement was signed by both Wilson and McEwen. Prior to the entering into thereof, Wilson attempted to repudiate and deny that McEwen had any interest in the locations or the contract originally entered into with the Associated Oil Company. McEwen thereupon instituted suit against Wilson, joining the oil company, the Security Trust Company, and one William C. Davis, the latter having acquired from Wilson some interest in the property. The issues were joined and prior to the case going to trial a certain stipulation was entered into by all the parties to said action to the effect that upon its final determination there would be paid to the person or persons to whom said royalty should be awarded, such proportions as the court should determine. On January 10, 1923, judgment was duly made and entered giving and granting to McEwen one-half of all the interests acquired by Wilson under the locations made on and after January 10, 1910. It was also decreed that under the contracts of August 10, 1920, and April 2, 1921, above referred to, McEwen was entitled to one-half of the interests acquired by reason of Wilson's locations and also one-half of the compromise agreement made between the government of the United States with the Associated Oil Company under the contract of April 2, 1921. In other words, Wilson's and McEwen's interest collectively in the southeast quarter of section 26, township 30 south, range 24 east, was 1/24th of the royalty or 1/192d part of the seventy-five per cent; which would make their separate interest 1/384th part of seventy-five per cent of all production of

oil, gas and other substances obtained from the quarter-section mentioned. Prior to the settlement of the controversy between McEwen and Wilson, the Security Trust Company on September 21, 1921, entered into an agreement with certain of the locators who were entitled to a part of the royalty on the above-described quarter-section, whereby the Associated Oil Company was to pay to the Security Trust Company the royalties, and the owners of such royalties were to receive from such trust company the distributive share to which each was entitled. Thereafter, W. S. Lierly brought the present action against the Security Trust Company to recover the royalties in its hands. This action set forth the trust agreement and then alleged the reception by the trust company of a certain sum of money from the oil company. The action was filed on March 20, 1923, subsequent to the rendition of the decree in *McEwen* v. *Wilson*. On application of the trust company an order was made permitting it to pay the amount into court and certain of the royalty owners were then substituted as defendants in the action. As above recited, certain of these defendants filed pleadings. McEwen answered, denying any knowledge of the contract of September 21, 1921, with the trust company, and he also alleged that he was not a party to that contract. He then referred to his action against Wilson wherein it was adjudged and decreed that he was the owner and entitled to the possession of 1/384th part of seventy-five per cent of the royalty due from the oil company under the agreement of April 2, 1921; that the judgment had become final. Wilson also filed an answer claiming a 1/48th interest in the royalties. The action proceeded to trial before the court without a jury. There was introduced in evidence a certain schedule prepared by W. W. Kaye, Esq., one of the attorneys for plaintiffs herein, which purported to show the proportionate interests of the various grantors and their successors in interest in the fund. This schedule adopts the number 5,120 as a common denominator or number of shares into which the entire fractional interests of the several locators and their successors in interest is to be divided. It recites that Wilson is entitled to 80 shares and McEwen to an equal number. Under this computation Wilson and McEwen would be entitled to 80/5120th, or reduced to its lowest terms, 1/64th

of one-third, or 1/192d of the total royalties payable to each of the eight locators of one of the three quarter-sections surrendered to the government, there being, as above pointed out, twenty-four locators on the three quarter-sections surrendered. The trial court adopted the schedule as showing the interest that each party to the action owned in the fund and rendered judgment accordingly. It is appellant McEwen's contention that he was in no manner bound by the agreement entered into on September 21, 1921, by certain of the locators with the Security Trust Company, as he was not a party to it; that his rights were fixed and determined under his contract with the oil company and that never having conveyed any of this interest he was by reason of his judgment against Wilson entitled to one-half of the 1/192d part of seventy-five per cent of the royalties obtained from the oil company, which would be 1/384th of seventy-five per cent. This claim of appellant is not denied by respondents, but they take the position that as appellant has been awarded a greater amount under the judgment than he prayed for he is not injured and is therefore in no position to complain. Appellant, on the other hand, denies that the judgment secures to him the portion to which he is entitled and claims that it amounts to four times less than his rightful share. The record is not clear as to the manner in which Mr. Kaye determined the respective interests of the parties and counsel have not enlightened us upon the subject. Under the position which counsel have taken we do not feel that we are called upon to determine the arithmetical correctness of the involved schedule upon which the judgment is based. ▮ Appellant claims that he is entitled to 1/384th part of seventy-five per cent for the reasons above indicated. There is nothing in the record to show that McEwen has parted with any portion of this interest to which he is entitled under the contract with the oil company and counsel for respondents have not pointed out in what manner this interest has in any manner been affected, their only claim being that the judgment awards appellant a greater amount, for which reason he should not be heard to complain. Whether this be true or not would require an analysis of the schedule to determine, a task we do not consider we are called upon to undertake. There being no question but that appellant is

entitled to 1/384th part of the total royalties under his contract with the oil company, he should have judgment for this amount.

This being so, judgment is reversed, with directions to the trial court to enter judgment accordingly.

Knight, J., and Cashin, J., concurred.